**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| FERNANDO ORTIS RAMIREZ,<br>Petitioner,<br>v.<br>ACTING WARDEN OF THE ADELANTO DETENTION CENTER, et al.,<br>Respondents. | Case No. EDCV 26-4806-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On August 23, 2026, Fernando Ortis Ramirez (A# 200-973-287) ("Petitioner"), an immigration detainee who is in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, and is represented by counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"), claiming that arrest by ICE on June 28, 2026, and his ongoing detention violates his rights under the Fourth Amendment, the Fifth Amendment Due Process Clause, and the Immigration and Nationality Act. (Dkt. No. 1).

On September 1, 2026, Respondents filed an Answer to the Petition with exhibits. (Dkt. No. 8). Respondents argue that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a) under a reinstated final order of removal, which the Ninth Circuit has administratively stayed pending review of Petitioner's appeal of the immigration judge's negative credible-fear determination. (Id. at 2-3). On September 4, 2026, Petitioner filed a Traverse contending that his detention is governed by 8 U.S.C. § 1226(a), rather than § 1231(a), due to the Ninth Circuit's stay, and he is therefore entitled at least to a bond hearing. (Dkt. No. 9).

For the reasons stated below, the Petition is denied.[1]

**BACKGROUND**

Petitioner is a citizen and national of Mexico who previously entered the United States without authorization and was ordered removed on June 2, 2011. (Answer Ex. A). He apparently was removed to Mexico that day (Answer Ex. B), but he returned to the United States illegally in 2018 and was detained by ICE on June 28, 2026

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3-6).

(Answer Ex. C).[2] His prior removal order was reinstated upon his arrest, under 8 U.S.C. § 1231(a)(5).[3] (Answer Ex. D).

Petitioner claimed he had a credible fear of returning to Mexico, but an asylum officer determined that he did not establish a reasonable possibility of persecution or torture, and an immigration judge concurred with that finding after hearing Petitioner's testimony on July 27, 2026.[4] (Petition Exs. C-D). That

---

[2] Respondents have submitted copies of an immigration judge's order and a Warrant of Removal/Deportation, both dated June 2, 2011, which reflect, respectively, that he was ordered removed that day at a hearing in Eloy, Arizona, and was removed that same day to Mexico, "afoot," via Nogales, Arizona. (Answer Exs. A-B). Petitioner apparently alleges that he "was deported in 2018," not 2011. (See Petition ¶ 18, Ex. D at 5). Regardless, he does not dispute that he was previously ordered removed, that he was removed, and that he reentered illegally in 2018. (See Petition ¶¶ 18-19, Ex. D at 5).

[3] Section 1231(a)(5) provides:

> If the Attorney General finds that [a noncitizen] has reentered the United States illegally after having been removed . . . , under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

[4] A noncitizen who "'expresses a fear of returning to the country designated' in the reinstated order of removal . . . must be 'immediately referred to an asylum officer for an interview to determine whether the [noncitizen] has a reasonable fear of persecution or torture.'" Andrade-Garcia v. Sessions, 828 F.3d 829, 832 (9th Cir. 2016) (quoting 8 C.F.R. § 241.8(e)). "If the officer decides that the [noncitizen] does have a reasonable fear of persecution or torture, the case is referred to an immigration judge ('IJ') for full consideration of the request for withholding of removal only." Ayala v. Sessions, 855 F.3d 1012, 1015 (9th Cir.

determination was not appealable to the Board of Immigration Appeals. See 8 C.F.R. § 1208.31(g)(1). On July 28, 2026, Petitioner filed a petition for review in the Ninth Circuit. (Petition Ex. G (Ninth Circuit Case No. 26-4814)). That same day, the Ninth Circuit issued a temporary administrative stay of removal that remains in effect until further order of the court. (Id.). The matter is still pending.

Petitioner has two children, ages 13 and 16, who are United States citizens. (Petition ¶ 20).

**DISCUSSION**

As noted above, Petitioner argues that his detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Detention under § 1226(a) is "discretionary" and "provides for release on bond or conditional parole." Avilez v. Garland, 69

---

2017) (citation and some internal quotation marks omitted); 8 C.F.R. § 208.31(e). "If, however, 'the asylum officer decides that the [noncitizen] has not established a reasonable fear of persecution or torture,' then the [noncitizen] is entitled to appeal that determination to an IJ." Ayala, 855 F.3d at 1015-16 (citation omitted); 8 C.F.R. § 208.31(g). "On appeal, if the IJ affirms the officer's negative fear determination, the case is returned to the [Department of Homeland Security] for removal, and the [noncitizen] is not entitled to appeal further to the [Board of Immigration Appeals]." Ayala, 855 F.3d at 1016 (citation and internal quotation marks omitted). The noncitizen may, however, petition the Ninth Circuit for review of a negative reasonable fear determination. Id.

F.4th 525, 530 (9th Cir. 2023). Petitioner contends that this provision governs because the Ninth Circuit has stayed his removal. (See Petition at 20; Traverse at 2).

However, notwithstanding Petitioner's Ninth Circuit appeal and the temporary stay of removal issued in the case, § 1226 does not apply because there is no pending "decision on whether [Petitioner] is to be removed from the United States." First, to the extent that Petitioner's Ninth Circuit appeal concerns his claim for withholding of removal, prevailing on that matter would, at most, "inhibit the [reinstated removal] order's execution with respect to a particular country," Mexico, but Petitioner "still would be subject to removal pursuant to the reinstated order - the government simply would have to seek an alternate country to receive him." Padilla-Ramirez v. Bible, 882 F.3d 826, 832 (9th Cir. 2017). In such case, the reinstated removal order remains administratively final and is not being judicially reviewed, so his detention is governed by § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 526 (2021) (concluding that § 1231 "applies to [noncitizens] who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders"); Padilla-Ramirez, 882 F.3d at 834 (§ 1231(a) governed petitioner's detention under a reinstated removal order during pendency of withholding-only proceedings). Second, to the extent that Petitioner's appeal challenges the reinstatement of his removal order, review of such claims are generally "limited to

assessing ICE's determination of the factual predicates for reinstatement."[5] Padilla-Ramirez, 882 F.3d at 830 (quoting Villa-Anguiano v. Holder, 727 F.3d 873, 878 (9th Cir. 2013)); see also Guzman Chavez, 594 U.S. at 529 (noting that 8 U.S.C. § 1231(a)(5), which provides for reinstatement of removal orders for those found to have reentered the United States illegally, "'explicitly insulates the removal orders from review,' while also 'generally foreclos[ing] discretionary relief from the terms of the reinstated order'" (quoting Fernandez-Vargas v. Gonzales, 548 U.S. 30, 35 (2006))). The appeal could not affect the validity of "the underlying removal order itself," except in very narrow circumstances which would require Petitioner to "show a 'gross miscarriage of justice' in the original removal proceedings." Padilla-Ramirez, 882 F.3d at 830 & n.2 (quoting Villa-Anguiano, 727 F.3d at 877)). There is no indication that Petitioner's Ninth Circuit appeal alleges a "gross miscarriage of justice" regarding underlying removal order. See Ninth Circuit Case No. 26-4814, Dkt. Nos. 1-2. Absent any such pending challenge to the removal order, he is subject to § 1231(a). See Deagueros Mota v. Blanche, 2026 WL 972850, at *4 (S.D. Cal. Apr. 10, 2026) (petitioner was subject to § 1231(a) during appeal of reinstatement of removal order because

[5] Specifically, the Ninth Circuit's review is limited "to the three discrete inquiries an immigration officer must make in order to reinstate a removal order: (1) whether the petitioner is an alien; (2) whether the petitioner was subject to a prior removal order, and (3) whether the petitioner re-entered illegally." Garcia de Rincon v. Dep't of Homeland Sec., 539 F.3d 1133, 1137 (9th Cir. 2008) (citing Morales-Izquierdo v. Gonzales, 486 F.3d 484, 495 (9th Cir. 2007) (en banc)); see 8 C.F.R. § 241.8.

the appeal, which did not raise a "gross miscarriage of justice claim," could not affect validity of underlying removal order).

Section 1231(a) provides that noncitizens subject to final orders of removal must be detained for an initial period of ninety days (the "removal period"), 8 U.S.C. § 1231(a)(1)-(2), after which the government "may" continue to detain four designated categories of noncitizens, id. § 1231(a)(6). The ninety-day removal period for Petitioner began the day his removal order was reinstated, on June 28, 2026. See 8 U.S.C. § 1231(a)(1)(B); Guzman Chavez, 594 U.S. at 534 (noting that noncitizens were "ordered removed" when their prior removal orders were reinstated); Alva v. Kaiser, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("Petitioner's 90-day removal period began to run on December 1, 2018, the date that his removal order was reinstated after his reentry into the United States."). Because ninety days have not passed since Respondents detained Petitioner on June 28, 2026, his detention remains lawful under 8 U.S.C. § 1231(a)(2). See Guzman Chavez, 594 U.S. at 528 ("During the removal period, detention is mandatory." (citing 8 U.S.C. § 1231(a)(2))).

Moreover, even after the removal period, Respondents may continue to detain Petitioner at least for "a period reasonably necessary to bring about [his] removal from the United States." Zadvydas v. Davis, 533 U.S. 678, 689 (2001). "[T]he presumptive period during which the detention of [a noncitizen] is reasonably necessary to effectuate his removal is six months; after that, the [noncitizen] is eligible for conditional release if he can

demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark v. Martinez, 543 U.S. 371, 378 (2005) (quoting Zadvydas, 533 U.S. at 701). In other words, the "6-month presumption . . . does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

Here, the only apparent obstacle to Petitioner's removal is his pending Ninth Circuit appeal, and particularly the Ninth Circuit's administrative stay, which is unlikely to postpone his removal beyond the reasonably foreseeable future. See Deagueros Mota, 2026 WL 972850, at 4 (denying Zadvydas claim where petitioner had previously been removed to Mexico and was now subject to reinstated removal order after returning, and "the sole obstacle [to] removal" was his pending Ninth Circuit appeal of the reinstated removal order, which "does not render removal unforeseeable under Zadvydas" (citations omitted)); Bermudez v. Gonzalez, 2007 WL 2913938, at *5 (E.D. Cal. Oct. 4, 2007) (denying Zadvydas claim because "[a]lthough the Ninth Circuit has ordered a stay of Petitioner's removal pending review of the petition, once the stay is lifted, the agency is free to remove him"). At this time, therefore, Petitioner is not entitled to relief under Zadvydas.

Additionally, Petitioner does not merit release based on his claim that he was arrested without a warrant or probable cause in

violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2),[6] and 8 C.F.R. § 287.8(c)(2)(ii).[7] (See Petition at 18-21). The remedy for unlawful arrest generally is the suppression of evidence obtained therefrom, not release from custody. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040-41 (1984); United States v. Garcia-Beltran, 443 F.3d 1126, 1131-32 (9th Cir. 2006); see also Martinez-Medina v. Holder, 673 F.3d 1029, 1033-34 (9th Cir. 2011) (exclusionary rule applies in civil removal proceedings only when the Fourth Amendment violation is egregious). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." Lopez-Mendoza, 468 U.S. at 1039; see also Stone v. Powell, 428 U.S. 465, 485 (1976) (noting that "judicial proceedings need not abate when the defendant's person is unconstitutionally seized" (citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975); Frisbie v. Collins, 342 U.S. 519 (1952))); Garcia-Beltran, 443 F.3d at 1132 ("[T]here is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity." (quotation omitted)).[8]

---

[6] This statute provides, in pertinent part, that an immigration officer is authorized to arrest, without a warrant, "any [noncitizen] in the United States, if he has reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." 8 U.S.C. § 1357(a)(2).

[7] This regulation states that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii).

[8] "Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily

Petitioner's unlawful-arrest claims therefore do not entitle him to release from custody. See, e.g., Suraj v. Bondi, 2026 WL 507682, at *2 (W.D. Wash. Feb. 24, 2026) ("Suraj's account of his arrest . . . suggests that the ICE agents involved in his apprehension lacked probable cause to detain him and may have violated the law. However, even if his arrest was unlawful, it would not provide a basis for release from custody." (citation omitted)).

**ORDER**

Accordingly, the Court DENIES the Petition.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 9, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

invalidate later proceedings in all respects conformable to law. 'A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.'" U.S. ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158 (1923) (citations omitted).